## ALBERT N. HORNER vs..JOSEPHINE NITSCH.

*Jurisdiction of Equity—Usury—Enjoining Action at Law on Usurious Notes—Multifariousness—Belief Granted to One Defendant Against Another.*

When promissory notes have been delivered in settlement of usurious transactions between the parties, and in an action at law on the notes the defendant is unable to state the exact amount due to the plaintiff by reason of the complicated method in which the defendant has kept the accounts, then equity has jurisdiction to restrain the action on the notes until an accounting is had to show the sum due by the defendant less the usurious charges.

Plaintiff's bill alleged that the defendant H had discounted at the usurious rate of ten per cent a month various promissory notes made by other defendants, some of which were endorsed by the plaintiff; that the defendants, N and Mrs. N, had given to H two notes in consideration of the return of certain other notes representing usurious loans and renewals; that in renewing the loans H had purposely so commingled the different transactions as to make it very difficult, without a full accounting, to determine what is the legal indebtedness to him of the plaintiff or of N upon the notes bearing their names; that plaintiff had been sued at law on some of the notes by H or by his transferees under the Practice Act which required the defendant to state under oath the exact amount due on the notes, which for said reason they were unable to do. The bill prayed for an injunction to restrain H from prosecuting the actions at law on the notes until an account be stated and the true amount of indebtedness be ascertained. *Held,* that the bill is not multifarious, at least so far as N and Mrs. N are concerned.

*Held,* further, that the allegations of the bill state a case authorizing a Court of equity to grant relief against the usurious transactions and to issue the injunction asked for.

*Held,* further, that upon the petition of Mrs. N during the pendency of the suit, the Court had the power to enjoin H from prosecuting actions at law on the notes against her until the accounting prayed for in the bill has been had.

When a bill alleged that one of the defendants took from another promissory notes which represented usurious transactions, the latter defendant is entitled to affirmative relief against the other defendant so exacting usury.

The borrower in a usurious transaction is not *in pari delicto* with the lender, and hence may rely upon the illegality of the contract under which usury was paid.

The fact that after filing a bill for an accounting between the plaintiff and the defendants on account of usurious transactions, plaintiff was adjudicated a bankprupt and submitted the case to the discretion of the Court, does not deprive the Court of its jurisdiction to enjoin an action at law by one defendant against another, upon petition of the latter, and to decree on accounting between these defendants as to the usurious transactions.

Appeal from the Circuit Court No. 2, of Baltimore City, (DENNIS, J.)

The cause was argued before McSHERRY, C. J., BOYD, SCHMUCKER and BURKE, JJ.

*Charles F. Harley* (with whom was *John B. A. Wheltle* on the brief), for the appellant.

*Robert Biggs* (with whom was *John H. Dumler* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from an order of Circuit Court No. 2, of Baltimore City, refusing to dissolve an injunction *pendente lite* which had been issued in the present 'case against the defendant Albert N. Horner on the application of his co-defendant Josephine Nitsch.

The original bill in the case was filed on December 27th, 1902, by Moses Greenberg against Albert N. Horner, his wife, Mary D. Horner, Arthur B. Nitsch, William M. Warfield, Abraham S. Potter and others. Its purpose was to procure an accounting between the parties to ascertain and determine the true amount, if anything, due to Horner as a result of a series of alleged grossly usurious loans and discounts, and usurious renewals thereof from time to time made for the benefit of the plaintiff and Arthur B. Nitsch on promissory notes signed or endorsed by one or more of the parties to the case. The bill also prayed for an injunction restraining Horner from assigning, transferring or prosecuting·suits upon any of the said notes held by him, until the accounting asked for had been made.

A preliminary injunction as prayed for was granted against Horner upon the filing of the bill, but on January 23rd, 1903, it was so modified as to apply only to suits against the plaintiff, and on June 16th, 1904, it was dissolved by consent, the plaintiff having been adjudicated a bankrupt. As soon as this injunction was modified so as to apply only to suits against the plaintiff Horner brought suit at law on two of the notes against Mrs. Josephine Nitsch, who had endorsed them. Thereupon the Circuit Court upon her application granted a new injunction against Horner restraining him from prosecuting his suit at law against her until, by the statement of an account in the present case, it should be ascertained what was the correct amount due upon the two notes constituting the cause of action in the suit at law.

The allegations of the bill so far as they relate to the present controversy are substantially as follows:

In July, 1901, the plaintiff, Greenberg, at the request of Arthur B. Nitsch and Wm. M. Warfield took a note of Nitsch endorsed by Warfield to Horner, who was in the habit of discounting notes at usurious rates, and he discounted the Nitsch note at the rate of ten per cent per month. For several months thereafter Greenberg continued to procure Nitsch's notes, endorsed by Warfield or A. S. Potter and amounting in the aggregate to several thousand dollars, to be discounted by Horner, who uniformly deducted discount at the rate of ten per cent per month. At Horner's request Greenberg then began soliciting business for him and brought him for discount notes of various persons not parties to this suit which he, Horner discounted at highly usurious rates making large sums of money thereby.

For about eight months the loans represented by the Nitsch notes were, through the instrumentality of Greenberg, renewed by Horner who exacted the payment of ten per cent cash discount at each monthly renewal until Nitsch being no longer able to pay in cash the discount charges gave short notes for them endorsed by the same parties whose names appeared upon the principal notes. These notes were sometimes as a

matter of convenience drawn to the order of Greenberg and by him endorsed, but he did not share or participate in the discount or charges exacted by Horner.

About June, 1902, Horner having thus accumulated a large amount of the Nitsch paper demanded security therefor, whereupon Nitsch furnished him a note for $5,000 endorsed by his mother, the appellee, and Warfield, and subsequently furnished him an additional note for $3,000 drawn by Nitsch and endorsed by his mother. The only consideration given by Horner for these two notes of $5,000 and $3,000 respectively was the surrender of usurious notes of Nitsch, which he had procured as aforesaid to the amount of $7,780, and the promise to return similar usurious notes of Nitsch to the extent of $350 which has never been fulfilled. Horner demanded and received as further renewal charges when he took the two notes of $5,000 and $3,000 two additional notes, of $150 each, of which one was drawn by Nitsch and endorsed by Warfield, and the other was drawn by Warfield and endorsed by Nitsch. The notes which Horner thus procured from the parties we have named were transmitted to him through Greenberg, who had come to be his agent or go-between in his discounting business, but received no part of the profits thereof, and he required Greenberg to put his own name upon them "for memorandum only" as Horner said, and with an agreement that Greenberg was not to be held liable therefor.

The bill then alleges that all of the notes of Nitsch, to which we have referred, two of them endorsed by his mother and others by Potter, Warfield and Greenberg or some one or more of those persons represent but one transaction, namely, the borrowings of Nitsch from Horner with the usurious discounts charged thereon and that the books and papers relating to that transaction are in the possession of Horner, and that upon a proper application of all the money paid by Nitsch to Horner in connection with said transaction to the repayment of the actual loans made with legal interest thereon it will appear that the former has repaid to the latter in large part the money actually due to him. It is further alleged that

Horner has for pretended considerations transferred some of the notes aforesaid to his wife, Mary D. Horner, and others, to the defendants, Joseph E. Gartside and Robert H. Carr, Jr., and other persons and that Horner, Gartside and Carr have each brought suit at law on some of the notes against the plaintiff; and that it is impossible for him, in the absence of a full accounting by Horner to ascertain what if anything is due on the several notes held by the latter and his transferees, and that it is absolutely necessary in order that justice may be done and the rights and interests of the several parties interested preserved and a multiplicity of suits avoided, that an accounting should be had in equity whereby the exact amount of money due by Nitsch and the complainant be ascertained and determined.

The plaintiff tenders himself ready to the extent of his assets, which he discloses in the bill, to pay whatever if anything may be found to be due from him to Horner by the accounting and explains his failure to tender or offer to pay any particular sum as representing such indebtedness by the allegation that he has been unable to obtain from Horner the information necessary to enable him to do so although he has asked Horner for it.

The different parties alleged to be interested as makers, endorsers or holders of the outstanding notes mentioned in the bill are made co-defendants with Horner and the prayer is for a discovery by Horner in detail of the money lent by him upon the notes and the discount exacted therefor by him, for an accounting and an injunction restraining him from transferring any of the notes to other parties or bringing suits thereon.

The defendants, Horner and his wife, Nitsch, his mother, Josephine Nitsch, Warfield and Potter, all answered the bill. Horner in his answer did not directly deny the many and specific charges of usury on his part contained in the bill but said that he had purchased certain promissory notes from the plaintiff for value and before maturity and admitted that he and his wife together held Nitsch's notes to the amount of

$24,684, on which the plaintiff was a subsequent endorser. He denied that the plaintiff had ever been his agent although he admitted that he sometimes purchased notes from the plaintiff. He objected in his answer by way of demurrer, to the bill for multifariousness, because the plaintiff had an adequate remedy at law, and because it showed the plaintiff to be *in pari delicto* if its allegations were true.

The other defendants, except Mrs. Horner, practically admitted the allegations of the bill so far as they had knowledge of them and submitted themselves to the jurisdiction of the Court.

Mrs. Josephine Nitsch in her petition, filed February 13th, 1903, after she had answered and submitted to the jurisdiction of the Court, alleged that Horner held the two notes of her son, Arthur B. Nitsch, for $5,000 and $3,000, respectively, endorsed by her and by William M. Warfield, for which he had given no consideration whatever except the return by him to her said son of other notes which represented the last of a long succession of renewals of grossly usurious loans made to her said son and to The A. B. Nitsch Brick Co., and that the only amount due to Horner on the two notes so endorsed by her was whatever he may actually have loaned to her son and the Brick Company with legal interest upon the notes surrendered. That Horner in making the usurious loans to Arthur B. Nitsch and the Brick Company had taken as security therefor their notes grossly in excess of the amounts of the loans, on which he charged ten per cent per month in addition to the legal interest thereon, drawn in various ways calculated to mislead and confuse the transactions and make them difficult to unravel. That Horner had brought suit on the said two notes for $5,000 and $3,000, against her under the Act of 1886 which made it necessary for her to plead and state under oath the amount actually due on the two notes, which it was impossible for her to do until the account had been stated in this case and the amount so due correctly ascertained.

The prayer of the petition is for an injunction against Hor-

ner restraining him from prosecuting his suit at law on the two notes or instituting other suits against her thereon, until the account in the present case has been stated and the true amount due on the notes ascertained. On the filing of the petition and an appproved bond for $15,000, the injunction was issued as prayed with leave to Horner to move to dissolve it on five days' notice.

On April 21st, 1903, Horner answered Mrs. Nitsch's petition broadly denying its material averments, and disputing by way of demurrer her right to maintain her petition or obtain relief thereunder against him as her co-defendant. Leave having been granted to any of the parties to take testimony under the motion to dissolve, most of the parties to the suit were examined as witnesses, and their testimony including a number of exhibits appears in the record.

We deem it unnecessary for the purposes of the issue now before us to review this testimony in detail. It is sufficient to say that in our opinion it furnishes strong *prima facie* proof of the practice of gross and excessive usury in the acquisition by Horner of the notes of Arthur B. Nitsch, the surrender of which is practically admitted to have formed the consideration for the delivery to him of the two notes for $5,000 and $3,000 endorsed by Mrs. Nitsch on whose petition the injunction now before us was granted. The testimony presents like strong *prima facie* proof that Horner designedly commingled and confused his loan or discount transactions with Arthur B. Nitsch and the plaintiff Greenberg in such manner as to make it difficult for them and impossible for Mrs. Nitsch to determine what sum is lawfully due on the two notes which bear her endorsement, and for which she has been sued at law by Horner in a form of action which requires her as the price of the privilege of defending the case on its merits to state under oath the sum actually due on the notes. In the face of this testimony the learned Judge below was justified in refusing to strike out the injunction granted on the petition of Mrs. Nitsch provided she was entitled, in the attitude in which she stood in the case to the other parties, to relief in the present proceeding.

The real questions presented by this appeal are first whether the allegations of the bill were such as to give the Court jurisdiction of the case, and secondly whether Mrs. Nitsch as a defendant is entititled to relief against her co-defendant Horner.

Counsel for Horner contended with zeal and ability that the bill was multifarious, but we think it is free from that vice at least so far as Mrs. Nitsch and her son and Horner are concerned. There is no absolute standard by which to determine whether or not a bill is multifarious, and it is impossible to state a rule applicable to all cases. In *Brian* v. *Thomas*, 63 Md. 476, JUDGE MILLER speaking for this Court said: "As to the doctrine of multifariousness all the authorities agree that there is no rule of universal application, and all concede that much must be left to the discretion of the Court in particular cases." The essence of that fault in pleading is the improperly blending of distinct demands or independent matters in one bill.

In the present case we find Horner, the holder of a large number of promissory notes, of Arthur B. Nitsch, endorsed variously by the plaintiffs, Warfield and Potter, which are alleged to represent a single transaction or series of transactions consisting of loans to or discounts for Nitsch at grossly usurious rates and usurious renewals of such loans and discounts. Among these notes are the $5,000 and $3,000 ones bearing also the endorsement of Mrs. Nitsch. For these two notes it is distinctly alleged that no consideration was given except the return of certain other notes of Nitsch representing the usurious loans and renewals, and that Horner in renewing the loans had purposely so commingled and blended different usurious transactions as to make it extremely difficult if not impossible, without a full accounting with him, to determine what is the legal indebtedness to him of the plaintiff or of Mrs. Nitsch upon the notes held by him bearing their names. Under those circumstances he was entitled to file his bill. He had been sued at law on several of the notes by Horner and his transferees, and according to the allegations of his bill he could not, by reason of Horner's method of dealing with him in re-

spect to the various loans and discounts mentioned in the bill, ascertain except upon an accounting with Horner, how much he owed him if anything.

It is unnecessary to cite authorities in support of the proposition that, in Maryland, Courts of equity will grant relief against usurious contracts no matter what may be their form, and will permit no shift or device of the creditor to shield him in taking more than legal interest on a loan. Not only will relief be granted to the debtor who has paid the usury or been a party to the usurious contract, but equity will sometimes lend its aid to one who has been injured by the contract although not a party to it. Thus in *Rouskulp* v. *Kershner*, 49 Md. 516, the mortgagee of a leasehold on which the ground rent was alleged to in fact constitute the usurious interest on a loan, was held to be entitled to relief to the extent of the usury against the owner of the ground rent because the creation of the usurious rent had illegally lessened the value of the mortgage security.

The title to equitable relief on the part of Mrs. Nitsch, whose name was put upon the two notes endorsed by her as collateral security to Horner for what was due him on certain of the notes of her son, Arthur B. Nitsch, is still stronger than that of the plaintiff as she personally received no consideration from Horner or any one else for endorsing the notes. Nor does the fact that she and Horner are co-defendants in the case deprive her of her right to relief. Although as a general rule a defendant will not be allowed affirmative relief against a co-defendant in equity the rule is not without exceptions. In proper bills to account after a decree to account both parties are considered as actors and there may be a decree in favor of either the plaintiff or the defendant as the balance may be shown. *Miller's Equity*, sec. 721; *Colgate Owings case*, 1 Bland, 404; *Griffith* v. *Bronaugh*, 1 Bl. 548; *Hall* v. *McPherson*, 3 Bland, 534. No decree for an account has as yet it is true been passed in this case but the only relief granted to Mrs. Nitsch was an injunction *pendente lite* to stay the hand of Horner, in his suit at law on the notes endorsed by her, instituted after the commence-

ment of the present case in equity, until it could be ascertained here where all of the parties are before the Court how much is lawfully due upon the notes.

The objection, set up by Horner's answer to the bill on the ground that it showed the plaintiff to be *in pari delicto* cannot prevail because the latter as the borrower in an usurious loan is not regarded as *in pari delicto* but as *in vinculis* to the lender. *Williar* v. *Butchers Loan Assn.,* 45 Md. 546. Nor does he show himself to be *in pari delicto* by alleging that he at Horner's request procured him notes for discount at usurious rates for the bill alleges that he received no share or portion of the usurious charges made by Horner. Horner, who in his answer denies that the plaintiff was his agent, can hardly be heard to contend the latter put himself *in pari delicto* by alleging the fact of the agency. Having determined that the bill of complaint on its face gave the Court jurisdiction it was entirely proper to restrain the prosecution of the subsequent proceedings at law to the extent provided for in the injunction granted to Mrs. Nitsch.

This Court has granted relief to one defendant against another in other suits in equity than actions of account and that too where no relief was granted to the plaintiff. In *Riley* v. *Carter,* 76 Md. 581, the bill was filed by certain creditors to set aside as fraudulent a deed of trust made by their debtor and the debtor having been adjudicated an insolvent, his trustee was made a co-defendant to the suit. He by his answer claimed to be entitled to a decree, avoiding the deed, in his favor under the operation of the insolvent law and this Court upheld his claim holding that "relief may be given and decree passed between co-defendants." See also *Haugh* v. *Maulsby,* 68 Md. 426.

The precise question of jurisdiction presented by this appeal is not to what extent if at all Mrs. Nitsch will ultimately be entitled to affirmative relief in this case against any of her co-defendants; it is whether the Court below had power to issue and continue the injunction granted on the petition of Mrs. Nitsch. That question is fully answered in the affirmative by

sec. 190 of Art. 16 of the Code, which provides that "The Court may at any stage of a cause or matter on the application of any party thereto, or party in interest by motion or petition or of its own motion order the issue of a mandate (affirmative injunction) or injunction directing and commanding any party to such cause or matter or any party properly brought before it under the existing practice, to do or abstain from doing any act or acts whether conjointly or in the alternative, whether in the nature of specific performance or otherwise named in such mandate or injunction and may such terms and conditions (as to security, &c.), as to it may seem fit preliminary to the granting of such mandate or injunction."   As the Court required Mrs. Nitsch to file a substantial bond before issuing the injunction, Horner will suffer no injury by continuing it in force until the accounting prayed for in the bill has been had.

It appears from the record that the plaintiff, after he had been adjudicated a bankrupt, filed in the present case a suggestion of his bankruptcy and submitted the case to the discretion of the Court, but that did not deprive the Court of the right to decree an accounting nor take from the defendants any of their rights to relief in this proceeding.

The order appealed from must be affirmed and the case remanded.

> *Order affirmed with costs and cause remanded.*

(Decided June 14th, 1906.)