On November 28th, 1910, the appellee filed a bill of complaint against the appellant, in which he alleged that the railroad company had from time to time dumped a large quantity of earth and cinders upon his land which adjoins its right of way, and had negligently and knowingly allowed a great quantity of earth and cinders to be shoved and forced upon his land because of the failure of the defendant to properly protect the embankment along its right of way. It then alleges that several days before the bill was filed the railroad company did by its agents and employees enter upon a part of the plaintiff's land and was engaged in digging a ditch upon his property, into which they were preparing to place a pipe about thirty inches in diameter, that they were about to cut down and destroy valuable trees on said land, the destruction of which would do great and irremediable mischief and injury to the plaintiff, his property and estate. The bill prayed that the company be restrained and enjoined from entering or digging upon his property, or from cutting down or destroying the trees or any part thereof.
An injunction was issued as prayed, and on January 17th, 1911, an answer was filed, in which the defendant denied the allegations of the bill and demurred to the whole bill, because on its allegations the plaintiff had a plain, adequate and complete remedy at law. Whether the answer overruled the demurrer is now immaterial, as the Court below dismissed the bill and no appeal was taken. Nothing further was done until January 10th, 1913, when the railroad company asked to have the motion for the dissolution of the injunction set down for hearing. An order was passed setting it down for hearing on January 16th, with leave to both sides to offer evidence, but on that date the company, with leave *Page 410 
of the Court, filed a "motion or petition" consisting of twelve paragraphs, in which it is alleged that on December 9th, 1835, the company acquired by purchase the parcel of land for its right of way and other corporate purposes which is set out in a copy of a deed filed; that it took possession of it and appropriated it to its corporate purposes and uses and constructed over it a high embankment of an average height of about twenty feet to secure the necessary grade, and built its railroad tracks thereon; that it has since the date of the deed held and had possession of the whole of said parcel of land, within the bounds thereof as described in the deed, and has maintained the embankment and tracks and has used and enjoyed the whole extent thereof, without any interference or disturbance until the filing of the injunction by the appellee; that at no time has the company invaded, or in any manner encroached upon the property of Silbereisen by its embankment, works or other railroad structures, and that any change in width or height or in position of said embankments has always been and is now within the limits of the property lines of the company; that on or about November 28th, 1910, in the necessary care and upkeep of the said embankment, and for the purpose of discharging its duty and obligation to provide safe, convenient and quick transportation of its passengers and freight, and wholly within the limits of its own property, it began to lay a drain or pipe line to carry off the surface water, when the injunction was obtained on the untrue and unwarranted statement that the drain and ditch were on the land of the plaintiff, and would cause him irremediable mischief and injury.
It is then alleged that although the defendant company had filed its answer denying the allegations of the bill upon which the injunction was issued, and although the plaintiff did not proceed thereafter in said equity cause, yet on the ____ day of December, 1912, and on divers other days, between that day and the filing of the motion or petition, the plaintiff entered upon the land of the defendant and wrongfully *Page 411 
dug up and hauled away the earth and soil for the distance of three hundred feet along the western line of said lot, of the width of four or five feet and of a depth of three feet, — all said acts having been done wholly within the lines of said lot of defendant which was then in its possession; that the plaintiff claims title to a portion of the original tract under a common owner or grantor with the defendant, James Hill, but said Hill conveyed the parcel of ground to defendant in 1835, and did not convey the land which plaintiff claims until December 14th, 1851; that notwithstanding the possession of said lot with the embankments thereon by defendant, and in disregard of the terms of his own deed, and in violation and defiance of the rights of defendant for so many years possessed in undisturbed possession, the plaintiff made the said cut and built a line of fence upon defendant's land; that said cut was made without any previous notice or warning to defendant and whilst the injunction was still outstanding, and that said cut has removed and destroyed the toe of the slope of the embankment and deprived it of the support, stay and anchorage afforded and given since 1835, so that it is now without proper support and stay, and is developing large cracks and fissures because of the removal of the toe of the embankment; that he has given notice to defendant that he will make further encroachments and invasions upon its land by cutting down, digging up and removing more of the embankment.
It is further alleged that since the issuance of the injunction, although it is to be laid upon and through its property, it has not proceeded with the laying of said pipe line, and that the water is damaging and injuring the embankment and property of defendant, and rendering the same unfit for its railroad purposes and uses; that the excavating, removing and hauling away the earth and soil from the said embankment and the action of the surface water upon it, by reason of the wrongful acts of the plaintiff, will, if not restrained, destroy the proper and safe grade for the operation *Page 412 
of the trains of the defendant and deprive the ties and rails of the tracks of a safe, secure and stable support, "so that public travel, and the movement of freight and trains and engines will be rendered unsafe, uncertain, interrupted and irregular by the sinking and sliding of the said embankment from the causes aforesaid; and will utterly and irreparably ruin and destroy the said embankment for the corporate purposes for which the defendant corporation for so many years past has been, and is now using and employing it," etc.; "that it is absolutely imperative and essential in the discharge of the duties of the defendant corporation as a public carrier of freight and passengers under its charter powers and obligations that leave be granted to the said defendant corporation to repair the mischief and harm done by the said wrongful acts of the plaintiff, by taking the necessary steps and precautions to secure the said embankment from any further sinking, sliding and disintegrating by reason of the said wrongful acts of the said Louis Silbereisen."
The petition then prays (1) that upon final hearing said Silbereisen, his agents, etc., be perpetually enjoined from excavating, removing or hauling away the earth, soil and other material from any part of the said embankment and from any part of the land of defendant corporation within the lines of the deed from James Hill to it; that the said defendant corporation may be quieted in its right to the enjoyment of said land as above set forth, and be decreed to have the right to use and enjoy the same, etc. (2) That in the meantime, and until this cause can be fully heard and determined said Silbereisen be restrained from excavating, removing or hauling away the earth, soil and other material from said embankment, and from any part of the land of defendant contained within the lines of said deed. (3) That in the meantime and until this cause can be fully heard and determined that the railroad company be given leave and *Page 413 
permission to make the aforesaid embankment safe for public travel, and (4) for general relief.
An order was passed on that, directing that an injunction be issued as prayed in the second paragraph of the prayer for relief and that "Leave be and the same is hereby given to the said Baltimore and Ohio Railroad Company to make the aforesaid embankment safe and secure for public travel and use by the said railroad company in whatever way may be necessary within the limits of the property rights of the said Baltimore and Ohio Railroad Company, provided, however, that if the said Baltimore and Ohio Railroad Company shall, in so doing, encroach upon or enter upon the land of the said Louis Silbereisen, it shall be responsible therefor to him in damages, unless the said company shall otherwise agree with the said Louis Silbereisen."
That petition was filed under section 199 of Article 16 of the Code of 1912, which provides that, "The Court may at any stage of a cause or matter, on the application of any party thereto, or party in interest, by motion or petition, or of its own motion, order the issue of a mandate (affirmative injunction) or injunction, directing and commanding any party to such cause or matter, or any party properly brought before it under the existing practice, to do, or abstain from doing any act or acts," etc. The case of Horner v. Nitsch, 103 Md. 508, and others cited in the notes to that section, sufficiently sustain the right of the Court to issue an injunction in a case of this kind, and to avoid the necessity of discussing it.
The plaintiff (appellee) filed an answer to the petition in which he denies that the embankment, as at present constructed, is of the same grade, width, slope or elevation it was when originally constructed, and alleges that the railroad company has been constantly moving over its road bed and expanding its embankment. He also alleges that all he did was on his own land and he only removed earth that was on his property. He admits that he has no claim to *Page 414 
any part of the land conveyed to the defendant by the deed of James Hill. The whole property originally belonged to James Hill and as the deeds under which the appellee claims expressly limit the conveyance of his land to the lines of the property conveyed by said Hill to the railroad company, it is not contended by him that he has any right to the property so conveyed to that company, but the controversy is as to where the dividing lines between the properties are. By agreement the case was set down for final hearing and decree on the bill of complaint, motion or petition of defendant, answers and testimony filed and taken. A large amount of testimony was taken in open Court and on February 27th, 1913, the Court decreed that the orders filed on November 28th, 1910 (granting an injunction to the plaintiff), and January 16, 1913 (granting an injunction to the defendant) be rescinded, and that the petitions upon which they were passed be dismissed without prejudice to any proceedings at law that either of the parties may be advised to take. From the order or decree dissolving the injunction and dismissing the petition of the railroad company it took this appeal.
It will not be out of place to remark that this is the kind of case which could be settled more satisfactorily out of Court than in it, if each party is inclined to recognize the rights of the other. The land in controversy must be of very little value, and while the railroad company has no right to encroach upon the property of the appellee without first acquiring the right to do so by legal means, the evidence tends to show that the drain pipe it was laying when the plaintiff obtained the injunction would have been to the advantage of both parties. If it be conceded that the embankment has spread beyond where it was when first built, that does not in any way settle the correct location of the divisional lines, but if the railroad company has encroached upon the appellee's property, and it is necessary for its charter purposes, it should be purchased or condemned. *Page 415 
Without deeming it necessary to discuss the evidence on the subject, we are satisfied that we cannot determine from the plats and testimony now before us where the divisional lines in fact are. The locations of neither party as made are sufficiently well established to justify a Court of Equity in passing a decree fixing them. The question therefore to be determined is, whether under the evidence and circumstances the Court ought to have held the case until the lines can be properly established. We cannot agree that the evidence did not show danger to this embankment by reason of the acts of the appellee. It may be that the slide will not be dangerous if it is taken care of, but if the appellant is to be limited to the line claimed by the appellee, it may also be that it cannot be properly taken care of without an interruption to the running of the trains, and in railroad construction at a place which is ordinarily difficult to protect there should not be added to it other difficulties which may endanger the lives of the employees of the company and of the traveling public. There is ample evidence in the record to show that the water had been backed up into and against the embankment, which, together with the removal of what is spoken of as the toe of the slope, has caused cracks in the embankment, one of which is from twelve to eighteen inches wide, and about thirty feet long. Unquestionably those cracks were caused, at least in part, by acts of the appellee. It is not contradicted in the record that they came a few days after the toe of the slope was removed. The testimony of Messrs. Zepp, the track supervisor, Staubitz, the track foreman, and Trench, the division engineer, undoubtedly tends to show a dangerous condition of this embankment, caused in part at least by the acts of the appellee and there is nothing we find in the record to the contrary, as we do not understand Mr. Trench's testimony to be subject to any other interpretation. It is true that the order of the Court granting the injunction at the instance of the appellant gave it leave, "to make the aforesaid embankment safe and secure for public travel and use by the said railroad company in whatever way may be necessary *Page 416 within the limits of the property rights of" that company, but the very question in controversy was where those limits were.
The proviso at the end of the order — that if the railroad company "shall, in so doing, encroach upon or enter upon the land of the said Louis Silbereisen, it shall be responsible therefor to him in damages, unless the said company shall otherwise agree with the said Louis Silbereisen" — could scarcely be said in view of the previous part of the order which expressly said "within the limits of the property rights of" the company to release it from the effect of the injunction which was issued at the instance of the appellee, in so far as the land in dispute is concerned. If it was so intended, it ought to have said so, as those taking steps to make the embankment safe and secure for public travel and use of the railroad company might well have supposed they could not go upon the disputed strip without violating the injunction. But at any rate that order was rescinded on February 27th — only six weeks after it was passed — by the one now appealed from. That time might or might not be ample to do the necessary work, if the injunction did not prohibit the agents of the company from going upon the disputed strip, as that would depend upon what had to be done, the condition of the weather and other circumstances. There is ample authority for the continuance of the injunction issued at the instance of the appellant, at least until the rights of the parties can be settled at law, and we think that course should have been pursued.
In White v. Flannigain, 1 Md. 525, CHIEF JUDGE LE GRAND, after reviewing some earlier cases, said on page 543 that a Court of Equity will interfere: "1st. To prevent irreparable mischief or ruin. 2nd. To prevent a multiplicity of suits; and 3rd, where it is required by some peculiar circumstances;" and again, he referred, with approval, to what CHANCELLOR KENT said in Jerome
v. Ross, 7 Johnson's Chancery, 315: "1st. That an injunction will not be granted to restrain a trespasser, merely because heis a trespasser. *Page 417 
2nd. But that an injunction will issue when the injury is irreparable; or where full and adequate relief cannot be granted at law; or where the trespass goes to the destruction of the property as it had been held and enjoyed," etc. Those principles were again announced by JUDGE BRISCOE, in Long v.Ragan, 94 Md. 462. It would be difficult to find a case where an injunction would be more demanded "by some peculiar circumstances" than this, or "where the trespass goes to the destruction of the property as it had been held and enjoyed" more than it did in this instance — even if it be said that the damage would not be irreparable within the correct meaning of that term. Such a controversy as this, where the owner of land contiguous to a railroad claims it is encroaching upon him, is liable to arise at any time, and if it must be held that Courts of Equity have no power to restrain such owners from cutting away a part of an embankment, or removing some other structure necessary for the safety of the road which they claim to be on their land, because the railroad company has its remedy for damages at law, the traveling public and the employees of such company will indeed be subject to great dangers, without taking into consideration the loss inflicted upon the railroad company's property. The conditions in this case are such as make it peculiarly one for equitable interference until the rights of the parties to the land in question can be properly determined, especially as the appellee had on January 8th, 1913, through his attorney, notified the division engineer "to immediately remove the said embankment from Mr. Silbereisen's land; and if the same is not done by Saturday afternoon, January 11th, 1913, Mr. Silbereisen will have it removed at the expense of the railroad company."
In the first volume of Equitable Remedies, Supplementary toPomeroy's Eq. Juris, there is an instructive and able discussion of the subject of "Injunctions against Trespass," covering a number of sections of that work. In Section 503 the author says the reason, which sustains the holding that even *Page 418 
as against a defendant in possession a temporary injunction will issue, if, pending litigation, there will otherwise be such serious acts of trespass that damages will not be an adequate remedy, "has never been more forcibly and clearly stated than inDuvall v. Waters," 1 Bland, 569, and he then quotes at length from CHANCELLOR BLAND'S opinion in that case. In section 505 he says: "No argument or discussion will be necessary to show that when the plaintiff is in possession claiming title, he should be granted a temporary injunction, pending the litigation over title, against all trespasses, such that, from their nature or the surrounding circumstances (as for example the defendant's insolvency) he cannot have an adequate legal remedy for them." Then after pointing out in section 506 the meaning of the statement that "the plaintiff's title must be admitted, or be established by a legal adjudication, and the threatened injury must be of such a nature as will cause irreparable damage," he goes on to show that Courts of Equity can investigate the title themselves and finally dispose of the case, but adds: "Courts of Equity, however, more usually send the question to be tried at law, but this is from reasons of policy rather than of jurisdiction. If the plaintiff's title is clear, though denied by the defendant, a permanent injunction may issue at once. If the Court decides to have the question tried at law it may procure diligence in the prosecution of the ejectment suit by framing an issue as an incident to its own proceedings, and sending the parties to law with it; or by granting the temporary injunction to a plaintiff out of possession on terms that the injunction shall continue only if he begins and prosecutes his action of ejectment with diligence; or if the defendant is the party out of possession, and therefore the proper person to bring ejectment, by a provision that the injunction shall be made permanent, if he failed to do this within a reasonable time."
The methods suggested by that author seem to us to be wise and clearly within the powers of Courts of Equity. We would add in connection with his suggestion that in *Page 419 
this State the action of trespass quare clausum fregit is also frequently adopted to determine titles, and hence in imposing such conditions the Court of Equity can provide for either that action or ejectment, whichever to it seems best under the circumstances.
It was argued by the appellant that the question of title was not involved, and that it was merely a confusion of boundaries, but we think it is clear that the title to this strip is involved. If the line be as contended by appellant the title to it is undoubtedly in it, but if the appellee's locations be the true lines then it is in him, unless it has been so held by the defendant as to give it title by adverse possession. An action of ejectment, "may involve simply the question of title to a piece of land, in regard to the location and boundaries of which there is no dispute, or the contention may be whether the land in controversy, truly surveyed and located, is within the lines of the plaintiff's or defendant's title papers." 2 Poe, sec. 469. It is true the latter is called an "Ejectment Upon Location," but the plaintiff can only recover provided the title to the disputed tract is in him. Cases have frequently arisen, and still arise, particularly in the western part of this State, where the title depended upon the correct location of the division lines, and, as we have seen, the action of trespass quare clausumfregit is often resorted to in trying titles to land, and in actions involving locations it is much more satisfactory to have a warrant of resurvey, such as is provided for in sections 80, etc., of Article 75 of the Code, or a survey of that kind.
In this case it would be very difficult, if not impossible, for the Court to determine which is the correct line under the surveys that have been made, and therefore we do not deem it proper to attempt to do so. When the case is remanded, the lower Court can, in its discretion, frame an issue and send it to a Court of law, or can require one of the parties to institute a proceeding at law, to have the title *Page 420 
determined within a time to be named in its order. Whichever is done by the Court we would advise that it require the locations to be made as under a warrant of resurvey and by a disinterested surveyor. If the county surveyor is disqualified by reason of his connection with the appellee, another surveyor can of course be chosen.
In the meantime such steps as are necessary for the protection of the embankment should be permitted, if the parties can not agree, as it is to be hoped they can. The costs are already considerable and will be still larger if the litigation be continued. We regret that we do not feel at liberty to decide the question of the true location of the lines, and end the litigation, but a due consideration by each party for the rights of the other will readily enable them to avoid further costs, and it is for them, and not for the Court, to decide whether additional costs shall be incurred.
We will remand the cause without affirming or reversing the order appealed from, the Court below to continue the injunction as it did by its order of the 8th of March, 1913, and to provide for such proceedings at law as are authorized by this opinion. If after such reasonable time as the Court may allow, the title is or is not determined at law, this case can then be finally disposed of.
Cause remanded, without affirming or reversing the orderappealed from, for further proceedings in accordance with thisopinion, the costs to abide the final result of the case.
In overruling a motion for a modification of the decree, theCourt said:
We carefully considered the questions raised by the appellant, in its motion for a modification of the decree, before filing the opinion and passing the decree. We concluded, and *Page 421 
still think, that the disposition of the case made by us was the proper one, and there is no difficulty about continuing the injunction. The order of the lower Court had the effect of continuing the injunction, upon the filing of the appeal bond, until this Court disposed of the question. As we remanded the case without affirming or reversing the decree, in order that the proceedings therein referred to might be had, the case stands, under Article 5, § 38, "as if no appeal had been taken in the cause, and the decree or order appealed from had not beenpassed." In other words the injunction obtained by the appellant is continued under our opinion and decree as if the order dissolving it had not been passed. If the appellee in any way violates that injunction, it will be the duty of the lower Court to enforce it, or, if necessary, it could supplement its original order for the injunction in order to carry out the directions of this Court, as contained in its opinion.
We deem it proper that the final disposition of the costs be postponed as indicated in the opinion. If the appellee was responsible for them, as the appellant alleges in the motion, that and other questions will be considered when the time comes to finally act on the costs.
Motion for modification of decree overruled.
Filed August 5th, 1913. *Page 422