## Helen Mills, Administratrix, Plaintiff in Error, v. First State Pawners Society, Defendant in Error.

### Gen. No. 20,438.

PAWNBROKERS AND SECONDHAND DEALERS, § 2*—*when pledge in excess of statutory amount not available.* Where the pledgor of goods attempted to evade the provisions of the Pawners' Societies Act (J. & A. ¶ 2681) prohibiting loans to any one person in excess of two hundred and fifty dollars, by taking out loans far in excess of that amount in the names of fictitious persons, the property pledged cannot be replevied by his personal representative on the theory that the loans being illegal were void, since even though defendant was cognizant of the character of the transaction, the parties being *in pari delicto*, no cause of action could arise out of the transaction.

Error to the Circuit Court of Cook county; the Hon. H. STERLING POMEROY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed April 13, 1915.

ARTHUR C. BACHRACH, for plaintiff in error.

TENNEY, HARDING & SHERMAN, for defendant in error.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

Plaintiff in error brought an action in replevin and trover to recover articles of jewelry, or their value, from defendant in error, to which they were pledged for loans obtained by plaintiff's intestate, one Pfeil. We shall refer to the parties as plaintiff and defendant respectively. Judgment was for defendant, and the only question involved is whether plaintiff had a cause of action.

The defendant is a corporation organized under the Pawners' Societies Act (Hurd's R. S. 1913, ch. 32,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

p. 618), section 3 of which provides that "in no case shall the amount loaned to any one person exceed the sum of two hundred and fifty dollars." (J. & A. ¶ 2681.) At the time of Pfeil's death he was indebted to the defendant for said loans in a sum exceeding eight thousand dollars, for which the pledges in question were given. While no one of the loans exceeded the sum of two hundred and fifty dollars and no two appear to have been taken out in Pfeil's name, they were obtained under his directions and for his benefit in the name of fictitious persons.

That Pfeil deliberately engaged in a scheme to circumvent said provision of the statute is conceded. Whether defendant did was a controverted question, but one unnecessary to consider; for if defendant was not cognizant of the real nature of the transactions, it is admitted that plaintiff had no cause of action; and if defendant was, then the loans, being expressly prohibited by statute, were illegal and void (*Penn v. Bornman,* 102 Ill. 523), and the parties thereto, being *in pari delicto,* no cause of action could arise out of the transactions. (*Bishop v. American Preservers' Co.,* 157 Ill. 284; *Ellison v. Adams Exp. Co.,* 245 Ill. 410; *McMullen v. Hoffman,* 174 U. S. 639.)

It is unnecessary to expatiate upon the familar maxims cited and applied in the cases referred to and applicable here. According to plaintiff's own statement of the case, Pfeil conspired with the defendant to violate the statute; according to defendants, Pfeil induced it to make the loans on fraudulent representations as to whom they were for. Either state of facts would defeat the recovery. To the former, plaintiff's intestate being *in pari delicto,* the maxim *potior est conditio defendentis* applies, to the latter, the cause of action springing out of a fraud, the maxim *ex dolo malo non oritur actio* applies. Two things are manifest, therefore: (1) That on plaintiff's own theory of the facts the cause of action arises out of illegal

transactions; and (2) that defendant's unlawful possession of the articles pledged could not be proved without going into the illegal transactions and Pfeil's complicity therein.

The cases above cited are in point. In the *American Preservers' Co.* case, *supra*, an action of replevin was defeated because the plaintiff's right of possession was based on a bill of sale executed to accomplish an unlawful purpose in which it participated. The court said: "The general rule of law is, that a contract made in violation of a statute is void, and that, when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover." (p. 317.) In the *Ellison* case, *supra*, a shipper sought to recover from the express company the value of goods destroyed in the course of transportation, which he had knowingly and wilfully procured at less than regular established rates therefor in violation of the Interstate Commerce Act. The court held that as the cause of action had its basis in a contract of carriage that was an intentional evasion of the law, it came within the rule that a contract entered into in violation of an express statutory prohibition cannot be made the basis of an action in a court of justice; and the court said: "No person who has participated in a transaction forbidden by statute will be allowed to assert rights growing out of it." (P. 417.)

The words of Lord Mansfield in *Holman v. Johnson,* Cowp. 341, are particularly applicable to the present case: "No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If from the plaintiff's own stating or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of his country, there the court says he has no right to be assisted."

But it is argued by counsel for plaintiff that if the loans were illegal, the reception of the pledges was unlawful and, therefore, recovery of them or their value

may be had, citing *Schroeppel v. Corning*, 5 Denio (N. Y.) 236, and other cases where replevin or trover was successfully maintained. In each the property was pledged to secure loans tainted with usury. Several of them were decided upon statutory provisions relating to usurious loans. But in the absence of such provisions, the governing principle on which recovery is allowed in that class of cases is that the law does not regard whatever is done to obtain money on usurious terms as the voluntary act of the borrower. In the *Corning* case, *supra*, the court said: "He is not looked upon as a free agent, nor as a violator of the law; and to such a case the maxims, *volenti non fit injuria*, and, *in pari delicto potior est conditio defendentis*, have no application." (P. 241.) As put by Mr. Justice Story: "He stands *in vinculis*, and is compelled to submit to the terms which oppression and his necessities impose on him." (1 Story's Eq. Jur. [12th Ed.] sec. 302.) The same principle was applied in *Smith v. Cuff*, 6 Maule & Selwyn's Rep. 160, a case where a debtor, who had entered into a composition agreement with his creditors, was permitted to recover from one of them whom he had by private agreement paid in full, Lord Ellenborough saying: "This was not a case of *par delictum;* it was oppression on one side and submission on the other; it can never be predicated as *par delictum* when one holds the rod and the other bows to it." See also *Smith v. Bromley*, Doug. 696, where the principle was again recognized.

But the principle on which recovery is allowed in that class of cases has no application here. Pfeil was under no restraint or oppression; rather he was the aggressor in a deliberate scheme to violate a positive statute and thwart its purposes. In such a case the law lends no assistance to the wrongdoer or to those relying on his turpitude. The judgment will be affirmed.

*Affirmed.*