[No. 27890. Department One. October 1, 1940.]

THE GOODWIN COMPANY, *Appellant,* v. NATIONAL DISCOUNT CORPORATION, *Respondent.*[1]

[1]Reported in 105 P. (2d) 805.

522

*Ryan, Askren & Ryan, Howard W. Sanders,* and *Meyer Horowitz,* for appellant.

*Ballinger, Clark, Mathewson & Force,* for respondent.

SIMPSON, J.—This is an action for an accounting of income received from collateral security.

Plaintiff alleges that plaintiff, defendant, and the Goodwin Real Estate Co., Inc., the latter allegedly having been known by defendant to have been acting solely as plaintiff's agent, engaged in a series of seven transactions wherein various amounts of money were loaned by defendant to plaintiff, either directly or through the Goodwin Real Estate Co. The complaint further alleges that, in each instance, the debt was evidenced by a promissory note which exacted from plaintiff a usurious rate of interest; that certain collateral was placed in the hands of defendant as security for plaintiff's indebtedness to it; and that payments on the several notes, augmented by the statutory penalty for usury, as applied to each of the notes, and by income derived by defendant from collateral pledged to it by plaintiff, exceed amounts owing by plaintiff to defendant on the final note, into which were carried forward balances from all prior notes not otherwise accounted for under the terms of the several transactions between the parties. Plaintiff then prays judgment for the balance computed by it to be owing from defendant, for return of certain real estate conveyed to defendant as

security, and for cancellation of the assignment to defendant of certain real estate contracts.

In its answer, defendant admitted only that it received from plaintiff the first two of the promissory notes executed by plaintiff; that it acquired the remaining five from the Goodwin Real Estate Co. by purchase and discount; that it paid out the sums alleged by plaintiff in the acquisition of the various notes and received payments from plaintiff and the Goodwin Real Estate Co. as alleged; that the certain real estate contracts were pledged and the real property itself subsequently conveyed as security for the obligation represented by the final note; that certain income had been derived therefrom; that a policy of life insurance had been taken out on the life of the then president of plaintiff company; and that it had received the proceeds of that policy from the insurer. Defendant denied the remainder of the allegations of the complaint.

For affirmative defenses, defendant alleged payment of loans number one through six, inclusive, and alleged that plaintiff's cause of action was, in all events, barred by the statute of limitations. Defendant did not demand recovery of any sum from plaintiff. The reply put in issue the allegations contained in defendant's answer.

Trial to the court, sitting without a jury, resulted in a judgment for defendant. Plaintiff has appealed.

There is little actual dispute between the parties concerning the facts. The diversity of opinion relates to the proper construction which should be placed upon them. These facts, so far as material to a disposition of this case, are as follows:

Appellant corporation and the Goodwin Real Estate Co., Inc., (hereinafter referred to as the real estate company) occupied a common office and utilized, to a large extent, a common staff of employees. Ervin Shir-

ley Goodwin was president, and William H. White vice-president, of both corporations. Goodwin owned all but qualifying shares in appellant corporation, and a controlling interest in the real estate company. Appellant was engaged in developing and marketing large subdivisions of real estate. The real estate company was in the general real estate business, acting as agent and broker for close to a thousand individual clients.

Beginning in January, 1929, appellant borrowed various amounts of money from respondent, as indicated by the following history of transactions.

The first two loans, $50,000 on January 18, 1929, and $11,760 on June 28, 1929, were evidenced by appellant's promissory notes made payable to respondent in the amounts of $50,000 and $12,000, respectively. Payments on those notes were made to respondent by checks from both appellant and the real estate company.

Loan number three was made October 14, 1929. Unpaid balances of principal and interest to become due under the terms of notes one and two were carried forward into the terms of loan number three. Note number three was made in the principal sum of $50,-000, respondent actually advancing $23,166.84. This note, however, unlike the first two, was made payable to the real estate company, and was by it endorsed over to respondent. Each of the remaining transactions was, in a like manner, routed through the real estate company; respondent, in each instance, subtracting from the acquisition cost a substantial "discount."

Advances made by respondent for loans three to six, inclusive, were in the form of checks made payable either to the real estate company or directly to third persons to whom appellant was indebted. Amounts received by the real estate company in this manner were credited on its books to appellant. Appellant's

check provided the first payment to respondent on note number three. Remaining payments received directly by respondent on this and subsequent notes were made by checks of the real estate company.

January 14, 1930, note number four was made in the principal sum of $14,279.86, $10,260.00 being the actual amount advanced.

January 24, 1930, a policy of term insurance in the amount of $50,000 was taken out on the life of Mr. Goodwin, appellant being named as beneficiary. The annual premium charged was the sum of $2,260. Five days later, January 29, 1930, appellant assigned its interest as beneficiary to respondent, as security for amounts then owing and to become due in the future to respondent. The first premium was paid to the insurer by respondent, as were all those subsequently due on the policy, the first premium forming a part of the amount advanced by respondent under loan number four.

Notes number three to six, inclusive, then being in default, according to their terms, balances of principal and interest from these notes were consolidated December 17, 1930, into loan number seven. The only actual advance made by respondent at this time was for the second premium on the insurance policy. The first installment of note number seven, executed by appellant in the principal amount of $48,994, was due December 25, 1931.

The total amount paid out by respondent for insurance premiums, exclusive of the amount included in the advance under note number four, was $13,620.95.

Further, respondent made an outlay of $728.24 in subsequent years for taxes and incidental expenses in connection with the realty securing the last note, the realty having been deeded to respondent on February 27, 1932. It was composed of a large number of lots

being sold on contract, the contracts being assigned to respondent. Respondent subsequently made collections on these contracts totalling $4,596.08.

In addition to the collections made upon the realty contracts, respondent received from the insurer the sum of $47,892.48, upon the death of Mr. Goodwin, April 5, 1937.

Further, respondent received certain moratorium moneys in 1931, the amount being $108.02.

We believe that the various transactions between the parties, including amounts repaid to respondent on notes number one through six, may be most clearly understood by a study of the following summary:

I. NOTES:

| Note | Date | Amount | Amount Actually Advanced | Amount Repaid |
|------|------|--------|--------------------------|---------------|
| No. 1 | 1/18/29 | $50,000.00 | $50,000.00 | $38,271.52 |
| " 2 | 6/28/29 | $12,000.00 | $11,760.00 | $ 6,386.00 |
| " 3 | 10/14/29 | $50,000.00 | $23,166.84 | $34,986.30 |
| " 4 | 1/14/30 | $14,279.86 | $10,260.00 | $ 7,571.16 |
| " 5 | 3/15/30 | $ 6,600.00 | $ 6,000.00 | $ 2,656.79 |
| " 6 | 4/15/30 | $11,000.00 | $10,000.00 | $ 1,974.65 |
| " 7 | 12/17/30 | $48,994.00 | (Ins. premium infra) | . . . . . . . . |

II. ADDITIONAL ADVANCES BY RESPONDENT:
    a. Insurance premiums—     $13,620.95
    b. Taxes and incidentals—     $   728.24

III. AMOUNTS RECEIVED FROM COLLATERAL:
    a. Insurance policy proceeds—     $47,892.48
    b. Realty contracts—     $ 4,596.08
    c. Moratorium money—     108.02

Appellant contends that the trial court erred in these respects: (1) In the admission of certain evidence; (2) in refusing to apply the statutory penalty for usury to notes one through six, inclusive, when computing the amount due respondent at the time note seven was executed; (3) in affirming respondent's right to recover the face value of note seven; (4) in holding that the statute of limitations began to run

against appellant's cause of action at the maturity date of note seven; (5) in holding that there remained a balance due respondent; (6) in dismissing the action; and (7) in refusing any of the relief prayed for in the complaint.

As preliminary to the discussion of the other questions presented, we consider the error alleged to have been committed by the trial court in the admission of evidence. It is appellant's contention that, because there appeared thereon a second assignment by appellant to respondent, not pleaded by either party, which purported to be a complete, irrevocable transfer of all of appellant's interest therein, it was error on the part of the trial court to admit, as its own exhibit, the insurance policy on the life of Mr. Goodwin. Assuming, but not deciding, that evidence of the second assignment was inadmissible as being without issues, we are unable to hold that the trial court committed reversible error in this respect, simply because it is apparent from the record that the trial judge made no use of this evidence which could possibly be construed as prejudicial to appellant.

Appellant's position is well taken with respect to its contention that respondent was in each of the seven transactions the true lender and appellant the true borrower, i. e., that the real estate company was known by respondent to have acted only as agent for appellant in making notes number three through seven; and, assuming that respondent exacted interest in excess of the maximum legal rate in making those loans, still it is our conclusion that the holding of the trial court in favor of respondent should be affirmed.

The way in which appellant arrives at the conclusion that there is nothing further owing to respondent may best be illustrated by the following figures set forth in appellant's brief, indicating the way in which

appellant computes the correct balance which should have been carried over into loan number three from loan number two:

| | | |
|---|---|---|
| Amount of note | | $12,000.00 |
| Principal payments | $6,000.00 | |
| Twice interest paid | 1,252.00 | |
| Unpaid interest reserved. | 92.00 | 7,344.00 |
| Correct carryover to Loan No. 3 | | $ 4,656.00 |

By applying this same method to each of the first six notes, appellant arrives at the conclusion that, at the time note number seven was given, but $1,152.94 was actually owed to respondent. Appellant then indicates the amounts advanced by respondent for additional insurance premiums, as well as for taxes and incidentals, and allows for interest on those amounts. The total reached by all of the items is then subtracted from the amounts received by respondent from the insurance policy, the realty contracts, and the moratorium money, along with interest on those items, and a balance is clearly shown to be due to appellant.

The way in which appellant arrived at the method of computing balances due under the first six notes, as illustrated by the figures for note number two, *supra,* was by the application of the penalty provisions of Rem. Rev. Stat., § 7304 [P. C. § 3161], which provides that, whenever the interest reserved exceeds twelve per centum per annum, in an action upon the contract the borrower shall be given credit for double any interest paid, and, further, judgment shall be less the amount of all accrued and unpaid interest.

We are of the opinion, however, that appellant was not warranted in applying the penalty provisions of the usury statute to the notes here involved, in view of the fact that the action brought by appellant was

an action in equity, seeking an accounting. We have held that the doctrine, or maxim, "He who seeks equity must do equity," applies in cases where affirmative equitable relief is sought against usurious contracts; and, in accordance with the dictates of that maxim, we have held that the person seeking equitable relief must offer to return what he actually received under the contract, along with lawful interest thereon. *Vanasse v. Esterman,* 147 Wash. 300, 265 Pac. 738. In that case, we stated:

"The statute [7304] does not fit this case. It applies where one to whom the usurious contract runs becomes plaintiff in an action on the contract to recover against the other party to the contract. This is not a proceeding to enforce an alleged usurious agreement, but a suit by the promisor asking affirmative aid of equity, which he can obtain only by doing equity. He admits having received $6,100, and going into a court of equity demands that his deed be declared a mortgage and to have it canceled upon the payment of $5,100 without any interest.

"Pomeroy's Equity Jurisprudence (4th ed.), vol. 2, § 937, on pages 1985 and 1986, says:

" 'It is a firmly settled rule, in the absence of contrary statutes, that where a borrower, who has not already paid the debt, brings a suit for affirmative relief against a usurious contract, he can obtain the remedy only upon the condition of repaying, or offering to repay, the sum which is justly and equitably due to his creditor,—the amount actually loaned and legal interest. The absence of such an offer is ground for defeating the suit.'

"Bispham's Principles of Equity (10th ed.), § 43, in considering the maxim 'He who seeks equity must do equity,' says:

" 'The usual illustration of this maxim is the case of a borrower of money on usurious interest, who comes into a court of equity to ask for relief by having the transaction set aside. Equity will not afford him redress except upon the terms of his returning the amount actually borrowed with lawful interest, be-

cause it is as equitable that the person who has loaned the money should have the amount with lawful interest returned to him, as that the borrower should be relieved from his unjust obligation to pay a usurious rate.' "

The holding in *Vanasse v. Esterman, supra,* is supported by the great majority of cases.

"The assignee of securities pledged as collateral to secure a usurious loan evidenced by a promissory note, or the maker of the note, may maintain a suit in equity to cancel the note and compel the delivery of the securities to him upon payment of the amount equitably due, as he has no adequate remedy at law. . . .

"It is well settled, in the absence of statutes to the contrary, that one seeking relief in a court of equity from a usurious contract must, as a condition of relief, do everything that equity requires, and if a borrower goes into a court of equity, in respect to a security given in connection with usurious contracts, or to avoid extortion or oppression, the court will compel him to pay principal and legal interest if the contract is executory, because there is moral obligation resting on him to do so, and it is equitable that he should be compelled to do it. The rule of course rests on the equitable maxim that 'he who seeks equity must do equity.' Though in some jurisdictions statutes have been enacted necessitating the application of a different doctrine, *it is generally held that the existence of a statute forfeiting the entire interest on all usurious contracts or giving to the person who pays usurious interest the right to recover back a multiple of the amount of the interest paid rendering the contract void, or imposing similar penalties, does not militate against the general rule.*" (Italics ours.) 27 R. C. L. 263, 264, §§ 66, 67.

"When the borrower appears in any capacity in a court of equity asking affirmative relief against a usurious contract to pay money, such relief, in the absence of statute providing otherwise, will be granted him only on condition that he do equity, that is, pay or tender the amount actually due, the cases proceed-

ing upon the principle that the borrower will not be relieved against a usurious contract unless he himself does that which the moral obligation arising from the receipt and appropriation to his own use of the money of another requires him to do. The fact that the statute declares all interest forfeited, or that contracts tainted with usury shall be deemed void, or makes the taking of usury a criminal offense, does not affect the operation of the rule, nor does the fact that the bill for relief is filed prior to the maturity of the debt." 66 C. J. 269, § 242.

"In case the usurious interest has been reserved, or paid in advance, the amount equitably due is the principal debt less the usurious excess of interest paid. In the absence of statute providing otherwise, if the contract for the usurious interest is still executory, the sum equitably due which the borrower must pay or tender is the principal debt with legal interest thereon, and complainant is not entitled to have penalties deducted from the debt." 66 C. J. 270, § 243.

For further authorities, see annotations in 17 A. L. R. 123 and 70 A. L. R. 693.

Rem. Rev. Stat., § 7300 [P. C. § 3156], provides that twelve per centum per annum shall be the maximum lawful interest in this state, and it is therefore necessary that one seeking equitable relief against a usurious contract must, if the contract be executory, tender the actual amount advanced by the lender, plus twelve per cent interest thereon. If the contract be executed, in part or in whole, equity will only give relief against the contract for excesses paid over the lawful rate.

"Therefore, upon the petition of the borrower, equity will compel the oppressive lender to restore to the borrower what he cannot equitably retain, that is, the interest paid in excess of the legal rate, or, if the account be still open, and any part of the principal unpaid, will apply such usurious payments in liquidation of the principal." 66 C. J. 268, § 240.

■ There is a possibility of two interpretations of the phrase "lawful interest," or "legal interest," which appears in the authorities as being part of that which must be paid or tendered before equitable relief can be had from a usurious contract. The first interpretation is that it refers to the maximum legal rate of interest, which, in Washington, is twelve per centum per annum, according to Rem. Rev. Stat., § 7300. The second interpretation is that it refers to the rate of interest which will prevail in the absence of an agreement between the parties regarding interest, namely, six per centum per annum, as provided in Rem. Rev. Stat., § 7299 [P. C. § 3155]. We have found one case in which the court held that the proper interpretation was the latter, namely, the rate prevailing in the absence of any agreement. *Moncrief v. Palmer,* 44 R. I. 37, 114 Atl. 181, 17 A. L. R. 119. However, other cases intimate that the amount to be tendered is the amount up to the point where usury began, and we are of the opinion that such should be the rule in this jurisdiction. We feel that equity may best be served by affording relief only against the actual usurious portion of the contract, whether the contract be executed in whole, or in part, or not at all.

■ In accordance with the principles set forth in the foregoing paragraphs, we have added twelve per cent interest to the various advances made by respondent, up to the date of trial, Feb. 1, 1939, making allowance for reductions of the indebtedness by repayments and by realizations on the collateral. We find that a balance remains due to respondent, and the existence of that balance forecloses the right of appellant to a recovery in this action for an accounting.

The following is a summary of the computations involved in the determination of whether or not a balance in favor of respondent exists:

I. Amounts owing to respondent:
 A. Balances carried forward from Notes Nos. 1
  through 6, based on an allowance of twelve
  percent interest on actual amounts advanced:
   No. 3 (including unpaid balances of No. 1
    and No. 2)............................ $11,720.52
   No. 4 ................................. 3,291.12
   No. 5 ................................. 3,779.38
   No. 6 ................................. 8,736.67

    Total ........................... $27,527.69
 B. Interest on $27,527.69, Dec. 17, 1930 to Feb. 1,
  1939, at 12% per annum.................... $26,839.50
 C. Insurance premiums paid, in addition to
  amount advanced under note No. 4.......... 13,620.95
 D. Interest on said premiums to Feb. 1, 1939, at
  12% ..................................... 8,287.07
 E. Taxes and incidental expenses.............. 728.24
 F. Interest on taxes, etc., to Feb. 1, 1939, at 12%. 222.84

    Total amounts due respondent...... $77,226.29
II. Amounts to be credited on above amounts owed:
 A. Proceeds of insurance policy................ $47,892.48
 B. Interest on proceeds, April 8, 1937 to Feb. 1,
  1939, at 12%............................. 10,439.18
 C. Collections on realty contracts............. 4,596.08
 D. Interest on collections to Feb. 1, 1939, at 12%. 3,150.44
 E. Moratorium money ....................... 108.02
 F. Interest on moratorium money to Feb. 1, 1939,
  at 12% ................................. 92.98

    Total amounts to be credited....... $66,179.18
 Balance owing to respondent................... $11,047.11

In applying the equitable principles set forth above to this action for an accounting, we find that this conclusion is not in conflict with the holding in *Trautman v. Spokane Security Finance Corp.,* 163 Wash. 585, 1 P. (2d) 867. In that case, which was also an action for an accounting, following the realization of money by the lender on the security given with the note, we stated:

"This court, in the case of *Lay v. Bouton,* 73 Wash. 372, 131 Pac. 1153, held that, in an equitable action for

an accounting, the usury statute should be applied in so far as the evidence demonstrated that the same was applicable."

We then proceeded to allow the borrower the excess over the actual principal advanced, *less* the interest reserved. In other words, we applied the statutory penalty to the equitable accounting action. The application was made, however, after the full amount due had been paid together with interest in excess of twelve per cent per annum.

The judgment is affirmed.

BLAKE, C. J., BEALS, MILLARD, and ROBINSON, JJ., concur.

[1]Reported in 105 P. (2d) 827.