J. Hammond McNish, Administrator of the Estate of
Burel Kinney, deceased, appellant, v. General Credit
Corporation, a corporation, appellee.
83 N. W. 2d 1

Filed May 3, 1957. No. 34125.

*Ewald D. Warnsholz* and *J. Max Harding,* for appellant.

*Harold A. Prince, Walter P. Lauritsen, Conway & Irons,* and *Martin, Davis & Mattoon,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Cheyenne County. Therein, on March 1, 1955, Burel Kinney

brought an action against the General Credit Corporation. The purpose of the action, as set forth in plaintiff's amended petition filed April 2, 1955, on which the action was tried, is to have declared null and void an alleged installment loan in the principal sum of $10,000, made by defendant to plaintiff, because the interest charge of $1,200 made for the use thereof is in violation of the maximum amount authorized by the provisions of section 45-138, R. S. Supp., 1953, which statute deals with "Installment Loans" of over $1,000. The relief asked is that the promissory note evidencing the indebtedness be held null and void and that defendant be required to refund to plaintiff all payments it has received thereon from plaintiff. The primary defense pleaded is that the indebtedness owing from plaintiff to defendant is not a loan but the balance due on the time purchase price plaintiff agreed to pay for a used truck and therefore not subject to the provisions of the foregoing statute. The trial court found for the defendant and dismissed plaintiff's action. Plaintiff thereupon filed a motion for new trial and this appeal is from the overruling thereof.

Plaintiff was accidently killed on January 16, 1956, and this action was thereafter, on February 28, 1956, revived in the name of J. Hammond McNish as administrator of his estate. We shall hereinafter refer to decedent as Kinney.

Kinney had been engaged in the trucking business with headquarters near Sidney in Cheyenne County, Nebraska, since November 25, 1951. Appellee is a Nebraska corporation with its principal place of business in Hastings, Nebraska, where, at all times herein material, it was licensed to and operating an installment loan business at 615 West Second Street. The Hastings Motor Truck Company, a Nebraska corporation, was, at all times herein material, engaged in the selling and servicing of trucks with its principal place of business located in Hastings. Clinton J. Sahling, hereinafter

referred to as Sahling, was a stockholder, the vice-president, and a salesman of this corporation, which we shall hereinafter refer to as H. M. T. Co.

On June 22, 1954, in response to a telephone call from Kinney on June 21, 1954, Sahling went to Sidney where, on June 23, 1954, he met Kinney and, in the presence of Mrs. Kinney, negotiated the sale to him of two used trucks, the sale of one of which is the basis of this action. We shall more fully set out the facts relating to the sale of this truck in connection with our discussion of the nature of the indebtedness herein involved for the principal question to be determined is whether or not the contract entered into was a sale on time, with deferred payments, or one for cash, with a loan being made to pay the balance of the purchase price.

As a preliminary we shall briefly answer three propositions raised but not discussed. The transaction herein involved was entered into at Kinney's place of business near Sidney in Cheyenne County, Nebraska. Consequently the district court for that county had jurisdiction of the subject matter. See § 25-404, R. R. S. 1943. It provides in part: "Actions for the following causes must be brought in the county where the cause or some part thereof arose: (1) An action for the recovery of a fine, forfeiture, or penalty, imposed by a statute, * * *."

Article I, section 3, of the Constitution of Nebraska, provides: "No person shall be deprived of life, liberty, or property, without due process of law." We think sections 45-124 and 45-125, R. R. S. 1943, adequately meet this constitutional requirement. They provide, insofar as here material, as follows:

"No license shall be granted to any person unless and until such applicant therefor shall file with the Department of Banking a designation in writing that appoints the Director of Banking to act as applicant's agent, upon whom all judicial and other process or legal notices directed to such applicant may be served. Service upon the agent, so designated, shall be equivalent to

personal service on the applicant or licensee." § 45-124, R. R. S. 1943.

"Service shall be made in duplicate upon the Director of Banking, or, in his absence, upon the person in charge of his office, and shall be deemed sufficient service upon such licensee. No such service shall be valid or binding against such licensee when licensee is required thereunder to file answer, pleading or defense within less than ten days from the date of mailing the copy of such service to such licensee. When legal process against any such licensee is served upon the director, he shall forthwith, by registered mail, send one of the duplicate copies prepaid and directed to licensee." § 45-125, R. R. S. 1943.

The requirements of these statutes were followed.

Appellee suggests, in view of Article VII, section 5, of the Constitution of Nebraska, that appellant has no standing in court because any penalty arising thereunder must be paid to the common schools in the place where it accrues. We do not think this constitutional provision has application here. See, Graham v. Kibble, 9 Neb. 182, 2 N. W. 455; Clearwater Bank v. Kurkonski, 45 Neb. 1, 63 N. W. 133; Everson v. State, 66 Neb. 154, 92 N. W. 137; School Dist. of the City of Omaha v. Adams, 147 Neb. 1060, 26 N. W. 2d 24.

Appellee raises the question, is the appellant the real party in interest? We doubt if the appellee is in a position to raise this question for in its answer it alleged: "That Hastings Motor Truck Company as agent for this Defendant negotiated with the Plaintiff herein for the sale of said tractor and on June 24, 1954, sold the said tractor to the Plaintiff herein * * *. That subsequently on July 1, 1954, a certificate of title to the said tractor was issued in the name of the Plaintiff being title No. 39-45594 * * *." We said in Wright v. Lincoln City Lines, Inc., 160 Neb. 714, 71 N. W. 2d 182:

"A party may at any time invoke the language of the pleading of his adversary on which the case is tried on

a particular issue as rendering certain facts indisputable; and in so doing he is neither required nor permitted to offer the pleading in evidence.

"An admission made in a pleading on which the trial is had is more than an ordinary admission. It is a judicial admission and constitutes a waiver of all controversy so far as the adverse party desires to take advantage of it, and is therefore a limitation of the issues."

We shall, however, for the purpose of discussing the facts relating thereto, consider this question.

Section 25-301, R. R. S. 1943, provides: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section 25-304."

We have said of this section that: "The real party in interest is the person entitled to the avails of the suit." Gregory v. Pribbeno, 143 Neb. 379, 9 N. W. 2d 485. See, also, Dafoe v. Dafoe, 160 Neb. 145, 69 N. W. 2d 700; Uptegrove v. Metropolitan Life Ins. Co., 145 Neb. 51, 15 N. W. 2d 220; Kinsella v. Sharp, 47 Neb. 664, 66 N. W. 634.

Section 25-304, R. R. S. 1943, provides, insofar as here material, that: "* * * a person with whom or in whose name a contract is made for the benefit of another, * * * may bring an action without joining with him the person for whose benefit it is prosecuted."

We have said of this section: "A person with whom or in whose name a contract is made for the benefit of another may bring an action without joining with him the person for whose benefit it is prosecuted." Coe v. Nebraska Building & Investment Co., 110 Neb. 322, 193 N. W. 708. See, also, Stoll v. Sheldon, 13 Neb. 207, 13 N. W. 201.

It is true that Mrs. Kinney testified that Kinney had no interest in the trucks, nor in the trucking business he operated, except as manager thereof for W. W. Beckley of Cozad, Nebraska, who had state-wide authority to operate a trucking business. However, the purchase agreement entered into on June 23, 1954, with

H. M. T. Co. shows Burel Kinney to be the purchaser; the note for the balance of the indebtedness and the chattel mortgage on the truck given to secure this note are signed by Kinney as the owner of W. W. Beckley Trans. Co.; and the letter of H. M. T. Co. to the county clerk of Cheyenne County, dated June 25, 1954, advises him that Kinney would be in to purchase his new title for the truck he had purchased from it and to issue a new title to him. This was done, as requested, and a certificate of title was issued in the name of W. W. Beckley Transportation Co. In this situation the following has application: "* * * where the more favorable evidence relied on by a party to overcome the effect of his own self-injurious statement is in his own testimony, no distinction is drawn as compared with the situation where the curative evidence is from other witnesses. It is still for the trier of fact to decide the issue upon all the evidence." 169 A. L. R. 805. See, also, Rueger v. Hawks, 150 Neb. 834, 36 N. W. 2d 236. As therein stated: "A party is entitled to the benefit of the testimony of other witnesses in contradiction of his own, wherever his own is not of the character of a judicial admission, and concerns only some evidential or constituent circumstance of his case."

We have come to the conclusion that the evidence establishes that Kinney became the owner of the truck purchased and, as such, the real party in interest. We do not think, based on the evidence adduced, that W. W. Beckley was personally liable for the indebtedness herein involved. But even if it can be said the contract entered into was for the benefit of W. W. Beckley, which we do not find to be the fact, the action could still be maintained by Kinney under the provisions of section 25-304, R. R. S. 1943.

Appellee raises the question, can an equitable action be maintained to enforce a penalty or forfeiture? It is true that courts of equity generally refuse to aid in the enforcement of penalties and forfeitures and leave the

parties to whatever remedies they may have at law. See 30 C. J. S., Equity, § 57, p. 398.

We have held this to be true when the provisions of a statute that are being sought to be enforced do not so provide. Davis v. Atlanta Finance Co., 160 Ga. 784, 129 S. E. 51. As well as where they do. Meredith v. Lyon & Healy, 3 Neb. (Unoff.) 485, 92 N. W. 122. However, this is not an absolute or inflexible rule and should yield when good reason exists for doing so. See 30 C. J. S., Equity, § 57, p. 398.

Public policy, as it relates to the effect of any violation of statutes dealing with installment loans by those engaging in the making thereof, has been fixed by the Legislature and not the courts. The Legislature, in this respect, has provided that: "Any contract of loan made in violation of this section, either knowingly or without the exercise of due care to prevent the same, shall be void and the licensee shall have no right to collect or receive any principal, interest, or charges on such loan." § 45-138, R. S. Supp., 1953.

"Any person, firm, partnership, corporation or association, or officer or employee thereof, violating any of the provisions of sections 45-138 to 45-145, shall be deemed guilty of a misdemeanor, * * *." § 45-153, R. R. S. 1943.

"Any contract of loan, in the making or collection of which any act is done which constitutes a misdemeanor under section 45-153, shall be void and the lender shall have no right to collect or receive any principal, interest or charges whatsoever." § 45-154, R. R. S. 1943.

"Violation of sections 45-114 to 45-155 in connection with any indebtedness, however acquired, shall render such indebtedness void and uncollectible." § 45-155, R. R. S. 1943.

These provisions apply to any person making such a loan, whether licensed or not. Powell v. Edwards, 162 Neb. 11, 75 N. W. 2d 122; State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215.

As stated in State ex rel. Beck v. Associates Discount Corp., *supra:* "Their purpose and design is to license and control the business of making such installment loans, and to restrict the enforcement and collection of illegal installment loans once they have been made by either licensees or nonlicensees, an all-inclusive and proper classification. Thus, the inhibitory provisions thereof include and apply to all lenders of installment loans, whether they be licensees or nonlicensees."

We see no reason why a court of equity should not lend its aid to help carry out this declaration of public policy by the Legislature. In fact, we think it should. Some of the reasons for doing so are well stated in State ex rel. Beck v. Associates Discount Corp., *supra,* as follows: "To declare such contracts void and uncollectible without cancellation thereof, or, more appropriately, without enjoining their collection, would permit defendants to subsequently use them only for purposes of unlawful harrassment and extortion, which this action sought to enjoin. Equity is not so helpless. Equity will always strive to do complete justice. To declare such contracts void and uncollectible and enjoin their collection if they are void and uncollectible, is but a necessary incident to the primary purpose of this action * * *." We recognize the action therein brought was authorized by section 45-157, R. R. S. 1943, but we see no reason why equity should not provide the same measure of relief for individual borrowers. See, also, Rosenblum v. Family Finance Corp., 179 Misc. 1050, 39 N. Y. S. 2d 230; Powell v. Edwards, *supra.* We recognize there are authorities holding to the contrary. See Goodwin Co. v. National Discount Corp., 5 Wash. 2d 521, 105 P. 2d 805, 135 A. L. R. 801. But our holding herein should not be construed to be in conflict with holdings denying such relief where a conspiracy existed between the borrower and lender to evade the law as was the situation in Ryan v. Motor Credit Co., 132 N. J. Eq. 398, 28 A.

2d 181, 142 A. L. R. 640, and Mills v. First State Pawners Society, 192 Ill. App. 231. Nor does this holding conflict with our own decisions, such as Eiseman v. Gallagher, 24 Neb. 79, 37 N. W. 941, and Bolen v. Wright, 89 Neb. 116, 131 N. W. 185, wherein section 45-105, R. R. S. 1943, was involved, for that statute does not make the contract void when a usurious rate of interest is being charged.

Appellee seeks to invoke the doctrine that he who comes into equity seeking relief must come with clean hands, suggesting that no court should lend its aid to a man who bases his cause upon an illegal act. It is true that in Grand Island Finance Co. v. Fowler, 124 Neb. 514, 247 N. W. 429, we said: "If the transaction was a loan for usury, as asserted by defendant, instead of a sale on time, the contracting parties entered into an unlawful agreement. Viewed in that light both participated in the lawlessness." However, since then we held in State ex rel. Beck v. Associates Discount Corp., *supra*, that: "Further, all of such borrowers are regarded not as in pari delicto but as in viniculus (sic) to defendants, to whom they owe no duty in equity. See, Davis v. Atlantic Finance Co., 160 Ga. 784, 129 S. E. 51; Cuneo v. Bornstein, 269 Mass. 232, 168 N. E. 810; Horner v. Nitsch, 103 Md. 498, 63 A. 1052; Goble v. O'Connor, 43 Neb. 49, 61 N. W. 131." See, also, Chakford v. Sturm (Fla.), 65 So. 2d 864; Milo Theater Corp. v. National Theater Supply, 71 Idaho 435, 233 P. 2d 425. In view of our more recent holding we find the language used in Grand Island Finance Co. v. Fowler, *supra*, does not correctly reflect the relationship of the parties. In view of the foregoing we do not find the principle here sought to be invoked has any application.

Appellee suggests that Kinney was buying this truck in order to use it in his own business under a certificate of state-wide authority issued to W. W. Beckley, thus violating the Motor Carriers Act, and that, under such a situation, he should have no standing in a court of equity. Assuming what appellee suggests is correct,

we do not think that fact has any relationship to the matter herein involved. Whether or not the contract entered into by the parties left the balance of the purchase price of the truck in the form of a loan or in the form of a deferred time purchase price has no relationship to the purpose for which the truck was intended to be used.

Should Kinney have tendered a return of the truck or the sum of $10,000 in order to be entitled to the relief he seeks? We think not. The statute does not so provide, in fact, it prohibits the collection or receiving of anything on such a loan and consequently the borrower owes no duty in equity to the lender. See, Cuneo v. Bornstein, 269 Mass. 232, 168 N. E. 810; Davis v. Atlanta Finance Co., *supra;* Nash Loan Co. v. Dixon, 181 Ga. 297, 182 S. E. 23. As stated in Nash Loan Co. v. Dixon, *supra:* "* * * the act of 1920 prohibits the collection of any part of the principal or interest, and consequently the borrower owes 'no duty in equity to the lender.' " In view of the relationship of the parties we think the foregoing is correct.

The principle here involved has been stated by this court many times since Grand Island Finance Co. v. Fowler, *supra.* The most recent case is State ex rel. Beck v. Associates Discount Corp., *supra.* In Powell v. Edwards, *supra,* we stated it as follows: "* * * an automobile dealer may in good faith sell a car on time for a price in excess of the cash price without tainting the transaction with usury, though the difference in prices may exceed lawful interest for a loan. * * * a time sale made in good faith at a price in excess of a cash price, even though the difference exceeds lawful interest for a loan, which price is arrived at by schedules furnished by a finance company which solicits contracts so entered into between a purchaser and a dealer, may not be regarded as being tainted with usury." However, as also stated in Powell v. Edwards, *supra:* "These rules however do not apply where it is proved that the

transaction was not made in good faith but that it was a scheme and a device pursued to evade the operation against it of the usury statute." In State ex rel. Beck v. Associates Discount Corp., *supra,* we said: "In such cases, however, the transaction between the buyer and seller must be a completed bona fide time price sale agreement." In order to have the foregoing principles apply it must appear that the buyer actually was informed of and had the opportunity to choose between a time sale price and a cash sale price. It is not enough to merely show that the instruments signed evidencing the indebtedness refer to a time price or time differential when, in fact, the buyer was never quoted a time sale price as such.

The burden of proof to show the nature of the transaction is on the appellant, since he claims it was a loan. The action being one in equity we will consider the record de novo and, in considering it, apply the usual principles applicable in such cases. In cases of this character courts will look through the form to the substance of the transaction in order to determine whether there was a bona fide time sale or a loan. See, State ex rel. Beck v. Associates Discount Corp., *supra;* General Motors Acceptance Corp. v. Weinrich, 218 Mo. App. 68, 262 S. W. 425. The statutes make no requirement that a borrower, in order to come within the provisions thereof, must be a necessitous one. In fact, the statutes relating to installment loans have no requirements of any kind in that respect and, in view of that fact, we would not be justified in so limiting the application thereof.

The evidence shows that on October 5, 1953, H. M. T. Co. sold to Wayne Crouch of Otis, Colorado, a 1953 5-ton Diamond T tractor, taking a lien thereon for $14,580 as a part of the purchase price; that appellee purchased this lien, H. M. T. Co. guaranteeing the payment thereof; that on June 18, 1954, because he was unable to meet the payments due, Crouch voluntarily turned the truck over to appellee, there being at that time unpaid on the

lien obligation slightly over $12,765; that at the time of the repossession H. M. T. Co. had a second lien on the truck in the sum of $1,059.96 which was unpaid; that the title to the truck was placed in the name of H. M. T. Co. for the purpose of sale, both it and appellee being interested therein; that H. M. T. Co. did not at that time pay appellee the amount of the lien it had guaranteed; that appellee authorized and directed H. M. T. Co. to sell the truck for its benefit; that on June 23, 1954, H. M. T. Co. did sell the truck to Kinney, taking from him in consideration therefor a 1952 International truck and an $11,200 note and chattel mortgage; that appellee accepted the note in part payment of the amount owing on the Crouch obligation, H. M. T. Co. paying the balance pursuant to its guarantee; that H. M. T. Co. guaranteed the Kinney note; and that appellee has kept the $11,200 note and received eight installment payments thereon.

The record shows the negotiations leading up to the sale of the truck took place in Kinney's place of business near Sidney, Nebraska, on June 23, 1954, in the presence of Mrs. Kinney. Mrs. Kinney testified Kinney bought the truck from Sahling for $13,500; that he gave in payment thereof a 1952 International tractor at an agreed value of $3,500 and $10,000; that Kinney advised Sahling he would have to borrow the $10,000 some place; and that Sahling advised Kinney they could take care of that as appellee would loan him that amount. Sahling, on the other hand, testified he and Kinney talked about a cash price and a different price if he wanted time in which to pay; that he told Kinney the price would be more if he wanted time to pay a part thereof; and that they agreed upon an amount which would give Kinney 18 months in which to pay. Since these two witnesses, who were present at the time, cannot agree upon what basis the obligation of $11,200, payable in 18 installments, was created we must turn to the other evidence adduced to assist us in finding out who is testi-

fying to the correct version. In this respect the purchase agreement, as filled in by Sahling, clearly evidences just what the original agreement entered into was. It shows the "Total Price" of the used truck purchased by Kinney as "$13,500.00"; that Kinney was given an "Allowance for Used 1952-L-200 International Truck" of "3500.00"; and that the "Total Price Difference" was "$10,000.00."

In respect thereto the agreement provides: "Purchaser agrees to terms of sale written herein * * *."

Sahling also filled in as part of this purchase agreement the following: "To be Financed 18 months - $10,000.00 Finance Charges - $1200.00 Insurance to be furnished by Customer Loss Payable Clause to General Credit Corporation, Hastings Nebr." In this respect the purchase contract provides: "There are no promises, verbal understandings, or agreements of any kind, pertaining to this contract other than specified herein."

Even the "Dealer's Work Sheet and Agreement," which Sahling testified he filled out with pen prior to Kinney signing the "purchasers Statement and Application for Credit," which is a part thereof, and before Mrs. Kinney signed the financial "Balance Sheet" of "Burel F. Kinney," contained no figure in respect to "Plus Increase in Time Price over Cash Price" although a figure of $1,200 was later put in in pencil.

Considering all of the evidence adduced, particularly the documents Sahling filled in and then had Kinney execute at the time the contract for the sale of the used truck was entered into, we can come to no other conclusion than that the sale of the used truck was made for $13,500, subject to a trade-in for $3,500, thus leaving a balance of $10,000 which was to be paid in cash and that Sahling agreed the people he represented would make Kinney a loan for that amount, and did, for a charge of $1,200. Section 45-138, R. S. Supp., 1953, provides in that respect that: "No licensee shall directly or indirectly charge, contract for, or receive a greater

rate of interest than nine per cent per annum upon any loan, or upon any part or all of any aggregate indebtedness of the same person, in excess of one thousand dollars." The charge of $1,200 made for an installment loan of $10,000 payable in 18 monthly installments is far in excess of the maximum authorized by section 45-138, R. S. Supp., 1953, and, because of that fact, is in violation thereof and consequently subject to the penalties imposed by the statutes, which have hereinbefore been set forth.

Appellee admits H. M. T. Co. was its agent for the purpose of selling the truck but claims such agency was subject to the general rule quoted in 2 C. J. S., Agency, § 114, p. 1322, as follows: "Ordinarily * * * an agent * * * may sell only for cash * * * and cannot assent in behalf of his principal to receiving payment in bonds, notes, or similar paper." It also claims that the general rule stated in 2 C. J. S., Agency, § 42b and c, pp. 1083, 1085, is here applicable. It is as follows: "The rule that the principal must have full knowledge of the facts has been applied among other types of actions noted herein both to unauthorized contracts and to tortious acts of agents. * * * he cannot ordinarily be deemed to have ratified the whole unauthorized act of his agent where the knowledge of such principal is partial or imperfect." We do not think the facts justify the application of either of these principles. The evidence shows appellee had repossessed the truck on which it had a very substantial defaulted lien; that H. M. T. Co. was also interested therein because of a second lien thereon but primarily because it had guaranteed to appellee the payment of the first lien; that the truck was taken in the name of the H. M. T. Co. to facilitate its sale in order to satisfy these unpaid liens, H. M. T. Co. not having paid appellee; that the sales of trucks are not usually on a cash basis but at least part of the purchase price is financed; that Sahling was acting as agent for both appellee and H. M. T. Co. in selling the

truck; and that appellee accepted the proceeds of the sale in part payment of the debt from Crouch, H. M. T. Co. making good the balance.

"Where a principal has by his voluntary act placed an agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in presuming that such agent has authority to perform a particular act, and therefore deals with the agent, the principal is estopped as against such third person from denying the agent's authority." Holt v. Schneider, 57 Neb. 523, 77 N. W. 1086.

"Whether or not an act is within the scope of an agent's apparent authority is to be determined under the foregoing rule as a question of fact from all the circumstances of the transaction and the business." Holt v. Schneider, *supra.*

Under the situation here presented we think Sahling, while acting as agent for both parties, had general authority to make a sale of the truck to the best advantage of both parties and, in doing so, was authorized to make whatever financial arrangements were necessary to finance the purchase price, or any part thereof. Further, as stated in Johnston v. Milwaukee & Wyoming Investment Co., 49 Neb. 68, 68 N. W. 383: "If the principal desires to repudiate the unauthorized act of his agent, he must, as soon as he acquires knowledge of the facts, return, or tender a return, of any benefits by him received as the proceeds of such acts, or be held to have ratified them." And therein we went on to say: "* * * that plaintiff should return the amount so used for its benefit, or tender a return of it, if it desired to repudiate the whole of the act of the agent when he sold the cattle to defendants as unauthorized, and this whether the discovery was made before or after commencement of the action to recover the cattle."

And, as stated in Tylee v. Illinois C. R. R. Co., 97 Neb. 646, 150 N. W. 1015: "A principal who accepts the

benefits of a contract executed in his behalf by an agent is chargeable with the instrumentalities employed by the latter in procuring it."

Under all of the facts disclosed by the record we find Sahling, as agent for appellee, acted within the scope of this authority in advising Kinney that the owners of the truck would finance for him the unpaid balance of the purchase price in the sum of $10,000 and, when he made a charge of $1,200 for doing so and they accepted the benefits thereof, they are now bound by his action and must bear the responsibility for his conduct.

The note herein given in the sum of $11,200 was void from its inception and neither the principal nor interest was collectible and the appellant was and is entitled to have it canceled. But is that the limit of the relief appellant is entitled to? As we have often said: "It is the practice of courts of equity, when they once have obtained jurisdiction of a case, to administer all the relief which the nature of the case and the facts demand, and to bring such relief down to the close of the litigation between the parties." Herrin v. Johnson Cashway Lumber Co., 153 Neb. 693, 46 N. W. 2d 111. See, also, Russo v. Williams, 160 Neb. 564, 71 N. W. 2d 131.

The evidence shows Kinney paid eight monthly installments of either $622.26 or $622.22 before instituting this action. The statutes, which have been hereinbefore quoted, not only provide that a loan made in violation of the installment loan statutes shall be void and uncollectible but further provide that the lender is is not entitled to "receive any principal, interest, or charges on such loan." See § 45-138, R. S. Supp., 1953. In view of this language we think the Legislature intended a lender should have nothing in such a situation. We therefore come to the conclusion that the appellee must return the payments which it received on this void loan. See, Rosenblum v. Family Finance Corp., *supra;* Chakford v. Sturm, *supra.* As stated in Rosenblum v. Family Finance Corp., *supra,* under statutes

comparable to ours: "A violation thereof, as indicated, renders the transaction void. Such being the case, the lender may not retain any benefits which it has received thereunder. Nor may it even seek to be placed in statu quo, for it is expressly forbidden, where at fault, 'to collect or receive any principal, interest or charges whatsoever' (sec. 358, supra)."

Having come to the conclusion that the trial court was in error in rendering the decree that it did dismissing appellant's action we reverse its judgment doing so with directions that it render a judgment as follows: First, that it cancel the installment note of June 23, 1954, from W. W. Beckley Trans. Co. by Burel Kinney owner to appellee in the total sum of $11,200; second, that it order the clerk of the district court to pay to appellant the sum of $6,222.24 deposited with him, pursuant to stipulation of the parties, to cover the last ten installments due on the above note; third, that it render a judgment against the appellee for the full amount of the eight payments made to it in the total sum of $4,977.96 plus interest at 6 percent on the amount of each payment from the date it was made; and fourth, that all costs be taxed to appellee.

REVERSED AND REMANDED WITH DIRECTIONS.