J. HAMMOND McNISH, ADMINISTRATOR OF THE ESTATE OF BUREL KINNEY, DECEASED, APPELLANT, v. GRAND ISLAND FINANCE COMPANY, APPELLEE.

83 N. W. 2d 13

Filed May 3, 1957. No. 34126.

*Ewald D. Warnsholz* and *J. Max Harding,* for appellant.

*Harold A. Prince, Walter P. Lauritsen, Conway & Irons,* and *Martin, Davis & Mattoon,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Cheyenne County. Therein, on February 3, 1955, Burel Kinney brought suit, consisting of two causes of action, against the Grand Island Finance Company. The purpose of the first cause of action, as set forth in plaintiff's amended petition filed on April 2, 1955, on which the action was tried, is to have declared null and void an alleged installment loan in the principal sum of $11,246.40, made by defendant to plaintiff, because the interest charge of $1,349.57 made for the use thereof is in violation of the maximum amount authorized by the provisions of section 45-138, R. S. Supp., 1953, which statute deals with "Installment Loans" of over $1,000. The purpose of the second cause of action, as set forth in the same amended petition, is to have declared null and void an alleged installment loan in the principal sum of $7,000, made by defendant to plaintiff, because the interest charge of $840 made for the use thereof is in violation of the maximum amount authorized by the provisions of section 45-138, R. S. Supp., 1953, which deals with "Installment Loans" of over $1,000. The relief asked in both causes of action is that the promissory note evidencing the indebtedness in each case be held null and void and that the defendant be required to refund to plaintiff all payments it has received thereon from plaintiff. The primary defense pleaded in each cause of action is that the indebtedness owing from plaintiff to

defendant is not a loan but the balance due on the time purchase price plaintiff agreed to pay for a truck and therefore not subject to the provisions of the foregoing statute.

Plaintiff was accidently killed on January 16, 1956, and the action was thereafter, on February 28, 1956, revived in the name of J. Hammond McNish as administrator of his estate. We shall hereinafter refer to decedent as Kinney.

The trial court found for the defendant and dismissed both of plaintiff's causes of action. Plaintiff thereupon filed a motion for new trial and this appeal is taken from the overruling thereof.

By stipulation of the parties, entered into at the time of trial, the evidence introduced was to be considered by the trial court in both this case and in McNish v. General Credit Corp., *ante* p. 526, 83 N. W. 2d 1. In this court the two cases were consolidated for the purpose of briefing and oral argument. Most of the questions raised are common to both cases and have been answered by our opinion in McNish v. General Credit Corp., *supra*. In view thereof we will not repeat that discussion herein except as a discussion of the facts in either cause of action herein make such reference necessary.

Kinney had, since November 25, 1951, been engaged in the trucking business with headquarters near Sidney in Cheyenne County, Nebraska. Appellee is a co-partnership consisting of Edgar Reynolds and Frances Reynolds. Its principal place of business is in Grand Island, Nebraska, where, at all times herein material, it was licensed to and operating a small loan business at 115 West Second Street. The Hastings Motor Truck Company, a Nebraska corporation, was, at all times herein material, engaged in the selling and servicing of trucks with its principal place of business located in Hastings, Nebraska. Clinton J. Sahling, hereinafter referred to as Sahling, was a stockholder, the vice-presi-

dent, and a salesman of this corporation, which we will hereinafter refer to as H. M. T. Co.,

Is the appellant the real party in interest as to his first cause of action? In respect thereto appellee pleaded: "* * * plaintiff, operating under the name of W. W. Beckley, bought said Diamond T. truck from the said Hastings Motor Truck Company; that the said Hastings Motor Company issued to the plaintiff, operating as W. W. Beckley, a transfer of said Manufacturer's Certificate and that a certificate of title to said W. W. Beckley was issued by the County Clerk of Cheyenne County, being No. 39-46753, * * * plaintiff became the owner of said truck; * * *." Under our holding in Wright v. Lincoln City Lines, Inc., 160 Neb. 714, 71 N. W. 2d 182, set forth with approval in McNish v. General Credit Corp., *supra*, we do not think that question can now be raised. The same is true as to appellant's second cause of action for in the answer thereto appellee alleged: "* * * Hastings Motor Truck Company sold said truck to the plaintiff, doing business as W. W. Beckley Trans. Co., * * * Hastings Motor Truck Company sold and delivered said truck to the plaintiff * * *."

As to the second cause of action there is a further factual reason why this contention has no merit. It is true that Mrs. Kinney testified that Kinney had no interest in the trucks, nor in the trucking business he operated, except as manager thereof for W. W. Beckley of Cozad, Nebraska, who had state-wide authority to operate a trucking business. However, the purchase agreement entered into on June 23, 1954, with H. M. T. Co. shows Burel Kinney to be the purchaser; the note for the balance of the indebtedness and the chattel mortgage on the truck given to secure the same are both signed by Kinney as the owner of W. W. Beckley Trans. Co.; the letter from appellee to the clerk of Cheyenne County dated June 25, 1954, advised him the certificate of title covering the truck sold was enclosed "assigned to Burel F. Kinney" and advised him that Kinney would

call to make application therefor and to issue a new title to him; and the "Transmittal Statement" of June 23, 1954, from H. M. T. Co. to appellee shows the purchaser to be Burel F. Kinney. In this situation we think the principles announced in McNish v. General Credit Corp., *supra,* are applicable. In view thereof we come to the conclusion that the evidence establishes that Kinney became the owner of the used truck purchased and, as such, the real party in interest. But even if it can be said that the contract entered into was for the benefit of W. W. Beckley, which we do not find to be the fact, the action could still be maintained by Kinney under the provisions of section 25-304, R. R. S. 1943.

The indebtedness involved in the first cause of action resulted from the sale of a new 1954 Diamond T 7½-ton truck while the indebtedness involved in the second cause of action resulted from the sale of a used 1953 Diamond T 5-ton tractor truck. The principal question to be determined in each case is whether or not the contract was in fact a sale on time, with payments deferred, or one for cash, with a loan being made to pay the balance of the purchase price.

Joe Barger, a salesman for H. M. T. Co., handled the sale of the new truck to Kinney as a result of a telephone call from Kinney. Kinney called H. M. T. Co. by telephone advising Barger, with whom he talked, that he wanted to buy a new tandem axle tractor and that he would like to trade in a 1953 New Moon house trailer thereon at a figure of $6,000. Kinney was apparently quoted a price of $17,246.40 for a new 1954 Diamond T 7½-ton truck of the kind he wanted and offered a trade-in of $6,000 for his house trailer, thus leaving a balance of $11,246.40. Kinney advised Barger he wanted time in which to pay the balance of the purchase price and he and Barger then agreed on 24 months for that purpose. Everett Blackburn, president of H. M. T. Co., then figured out for Barger what the payments would be if Kinney wanted 24 months to pay the bal-

ance of the purchase price, that is, $12,595.97 payable in 23 monthly payments of $524.83 and one of $524.88. Barger then advised Kinney by telephone of the amount it would take to buy the truck if he wanted 24 months in which to pay. Apparently Kinney agreed thereto for the papers were accordingly prepared and taken to Sidney where Kinney signed them on August 18, 1954. We think the record shows that Kinney was informed of what the balance of the cost of the truck would be if he wanted 24 months for the purpose of paying it. We think the agreement entered into between Kinney and H. M. T. Co. resulted in a bona fide time price sale agreement.

It is true that when H. M. T. Co. sold this paper to appellee on the following day that appellee discounted it $1,349.57 and remitted to H. M. T. Co. the sum of $11,246.40, being the exact amount of the balance if Kinney had made a cash purchase. However, as we have often said: "* * * a time sale made in good faith at a price in excess of a cash price, even though the difference exceeds lawful interest for a loan, which price is arrived at by schedules furnished by a finance company which solicits contracts so entered into between a purchaser and a dealer, may not be regarded as being tainted with usury." Powell v. Edwards, 162 Neb. 11, 75 N. W. 2d 122. Consequently the other provisions of the statutes relating to installment loans, which are cited by appellant, have no relationship to this paper.

We turn now to the factual background of the appellant's second cause of action. On June 22, 1954, in response to a telephone call from Kinney on June 21, 1954, Sahling went to Sidney where, on June 23, 1954, he met Kinney and, in the presence of Mrs. Kinney, negotiated the sale to him of two used trucks, the sale of one of which is the basis of the second cause of action herein.

The evidence shows that appellee had repossessed a 1953 Diamond T tractor truck which had previously

been sold by H. M. T. Co. to Raymond Bailey of Kansas City, Missouri; that at the time it was repossessed there was owing to appellee over $10,000 on the lien it held thereon, which indebtedness was guaranteed by H. M. T. Co.; that appellee took a certificate of title thereto in its name but gave H. M. T. Co. possession thereof and directed it to sell the truck; that H. M. T. Co. had a second lien thereon of $707 at the time it was repossessed by appellee; that on June 23, 1954, Sahling, for H. M. T. Co., sold the truck to Kinney, taking from him in consideration therefor a used 1951 Ford F-8 tractor truck and a $7,840 note and chattel mortgage; that appellee accepted the note and applied $7,000 in payment of the balance owing it of $6,806.75 and remitting to H. M. T. Co. the sum of $193.25, H. M. T. Co. in the meantime having paid appellee over $3,000 on the indebtedness pursuant to its guarantee thereof; that H. M. T. Co. guaranteed the Kinney note; and that appellee has kept the $7,840 note and received eight installment payments thereon each in the sum of $435.65 or $435.55 for a total of $3,485.10.

The record shows the negotiations leading up to the sale of the truck were had in Kinney's place of business near Sidney, Nebraska, on June 23, 1954, in the presence of Mrs. Kinney. Mrs. Kinney testified Kinney bought the truck from Sahling for $9,500; that he gave in part payment thereof a used 1951 Ford tractor at an agreed value of $2,500 and $7,000; that Kinney advised Sahling he would have to borrow the $7,000 some place; and that Sahling advised Kinney they could take care of that as appellee would loan him that amount. Sahling, on the other hand, testified he and Kinney talked about a cash price and a different price if he wanted time in which to pay the balance; that he told Kinney the price would be more if he wanted time to pay a part thereof; and that he and Kinney agreed upon the amount that would give Kinney 18 months in which to pay. Since these two witnesses, both of whom were present at the

time, cannot agree upon what basis the obligation of $7,840 payable in 18 installments was created we must turn to the other evidence adduced to assist us in finding out who is testifying to the correct version. In this respect the purchase agreement, as filled in by Sahling, evidences just what the original agreement entered into was. It shows the "Total Price" of the used truck purchased by Kinney as "9500.00"; that Kinney was given an "Allowance for Used 1951 F-8 tractor" of "2500.00"; and that the "Total Price Difference" was "$7000.00." In this respect the agreement entered into provides: "Purchaser agrees to terms of sale written herein * * *."

Sahling also filled in as part of this purchase agreement the following: "$7000.00 Financed 18 months $740.00 Interest Charges Loss Payable Clause to Grand Island Finance Co Grand Island Nebr." In this respect the purchase agreement provides: "There are no promises, verbal understandings, or agreements of any kind, pertaining to this contract other than specified herein." We think the language written in by Sahling reflects the agreement entered into although the interest charge, as shown by the note, was increased to $840.

Considering all of the evidence adduced, particularly the purchase agreement which Sahling filled in and then had Kinney execute at the time the contract for the sale of the used truck was entered into, we can come to no other conclusion than that the sale of the used truck was made for $9,500, subject to a trade-in for $2,500, thus leaving a balance of $7,000 which was to be paid in cash and that Sahling agreed the people he represented would make Kinney a loan for that amount, and did, for a charge of $840. The charge thus made for an installment loan of $7,000 payable in 18 monthly installments is far in excess of the maximum authorized by section 45-138, R. S. Supp., 1953, and, because of that fact, is in violation thereof and subject to the penalties imposed thereby.

Appellee admits it turned the truck over to H. M. T. Co. for sale and authorized it to sell it for appellee's benefit, and thus help liquidate the Bailey loan, but claims H. M. T. Co.'s salesman did not have authority to make a loan in its behalf. Under the situation here presented we think Sahling, while acting as agent for appellee, had general authority to make a sale of the truck to the best advantage possible for both parties and, in doing so, was authorized to make whatever financial arrangements were necessary to finance the purchase price, or any part thereof. We think Sahling acted within the scope of his authority in making the loan. Not only did appellee accept the fruits of what Sahling did, and receive payment thereunder, but it still possesses the note he secured for them and has never offered to return it. In view of the authorities cited in McNish v. General Credit Corp., *supra*, we find appellee is now bound by Sahling's actions in securing it and must bear the responsibility therefor.

The note herein given in the sum of $7,840 was void from its inception and neither the principal nor interest was collectible and appellant was and is entitled to have it canceled together with a return of all payments which have been made to appellee pursuant thereto.

Having come to the conclusion that the trial court was correct in dismissing appellant's first cause of action we affirm its judgment doing so with directions that all money paid to the clerk of the district court pursuant to the terms of the $12,595.97 note be turned over to the appellee. However, we are of the opinion that the trial court was in error in dismissing appellant's second cause of action and therefore reverse its judgment doing so and remand that cause back to the district court with directions to render a judgment therein in favor of the appellant as follows: First, that it cancel the installment note of June 23, 1954, from W. W. Beckley Trans. Co. by Burel Kinney owner to appellee in the total sum of $7,840; second, that it order the clerk

of the district court to pay to appellant the sum of $4,354.90 deposited with him pursuant to stipulation of the parties to cover the last ten installments due on the foregoing note; third, that it render a judgment against the appellee for the full amount of the eight payments made to it in the total sum of $3,485.10 plus interest at 6 percent on the amount of each payment from the date it was made; and fourth, that it tax all costs to appellee.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.